**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**Codi Evans**
16214 Eckhard Road
Bowie, MD 20716

       *Plaintiff,*

  v.

**Maryland National Capital Parks &
Planning Commission**
6611 Kenilworth Avenue
Riverdale, MD 20737

and,

**Chief Darryl McSwain**
*Individually and in His Official Capacity
as Chief with the Maryland-National
Capital Park Police*
8100 Corporate Drive
Hyattsville, MD 20785

and,

**Captain Michael Murphy**
*Individually and in His Official Capacity
as Captain with the Maryland-National
Capital Park Police*
8100 Corporate Drive
Hyattsville, MD 20785

and,

**Michael Riley**
*Individually and in His Official Capacity
as Director with the Maryland-National
Capital Park Police*
8100 Corporate Drive
Hyattsville, MD 20785

and,

Case No.: _____

*Jury Trial Demanded*

**Captain Darin Uhrig**
*Individually and in His Official Capacity*
*as Captain with the Maryland-National*
*Capital Park Police*
8100 Corporate Drive
Hyattsville, MD 20785

   *Defendants.*

## COMPLAINT AND JURY DEMAND

  Comes now the Plaintiff, by and through undersigned counsel, Cary J. Hansel, and the law firm of Hansel Law, P.C., and sues the above-named defendants, in support thereof stating as follows:

## INTRODUCTION

  1) This lawsuit is being filed against the Maryland-National Capital Park and Planning Commission ("MNCPPC") as a result of racial discrimination and retaliation suffered by Lieutenant Codi Evans ("Lt. Evans" or "Plaintiff") of the Maryland-National Capital Park Police ("Park Police").

  2) Lt. Evans began his employment with the Park Police in April 1999 as a police candidate.

  3) Since filing a complaint of racial discrimination, many of which's charges were sustained by an internal investigation, Lt. Evans has been subjected to various acts of discrimination and retaliation, in violation of his rights under the U.S. Constitution, federal, and state law, including:

    a) Being subjected to false allegations of fraud and theft;

    b) Being subjected to a hostile work environment; and

    c) Being subjected to arbitrary discipline by supervisors.

4)      But for Mr. Evans' race, he would not have been subjected to this disparate treatment, discrimination, and retaliation.

## JURISDICTION AND VENUE

5)      Jurisdiction is proper in this Honorable Court under 28 U.S.C. § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States.

6)      Venue is proper in this Honorable Court under 28 U.S.C. § 1391 because the parties are residents of the State of Maryland, or organized under the laws of Maryland, in which this district is located in, and the events at issue took place in Montgomery County, Maryland.

## PARTIES

7)      Plaintiff Codi Evans is an adult citizen of Prince George's County, Maryland, residing at 16214 Eckhard Road, Bowie, MD 20716.  At all times relevant to this complaint, Mr. Evans was an employee of Maryland-National Capital Park and Planning Commission as a member of the Maryland-National Capital Park Police.

8)      Defendant Maryland-National Capital Park and Planning Commission is a *sui juris* body politic and corporate, with the power to sue and be sued, established under the laws of Maryland in the Land Use article of the Maryland Code, § 15-101, *et seq.*

9)      Defendant Chief Darryl McSwain ("McSwain") is, and was at all times relevant to the occurrence complained of herein, an adult resident of the state of Maryland.  At all times relevant to the occurrence complained of herein, Defendant McSwain was employed by Defendant MNCPPC, and at all times relevant hereto was acting in his individual capacity and/or in his official capacity as chief with the Maryland-National Capital Park Police.

10)     Defendant Captain Michael Murphy ("Murphy") is, and was at all times relevant to the occurrence complained of herein, an adult resident of the state of Maryland.  At all times

relevant to the occurrence complained of herein, Defendant Murphy was employed by Defendant MNCPPC, and at all times relevant hereto was acting in his individual capacity and/or in his official capacity as lieutenant or captain with the Maryland-National Capital Park Police.

11)     Defendant Michael Riley ("Riley") is, and was at all times relevant to the occurrence complained of herein, an adult resident of the state of Maryland.  At all times relevant to the occurrence complained of herein, Defendant Riley was employed by Defendant MNCPPC, and at all times relevant hereto was acting in his individual capacity and/or in his official capacity as a director with the Maryland-National Capital Park Police.

12)     Defendant Captain Darin Uhrig ("Uhrig") is, and was at all times relevant to the occurrence complained of herein, an adult resident of the state of Maryland.  At all times relevant to the occurrence complained of herein, Defendant Uhrig was employed by Defendant MNCPPC, and at all times relevant hereto was acting in his individual capacity and/or in his official capacity as captain with the Maryland-National Capital Park Police.

## FACTS COMMON TO ALL COUNTS

13)     On or about April 5, 1999, Lt. Evans, an African American, began his employment with Maryland-National Capital Park Police ("Park Police") as a Police Candidate.

14)     On or about June 24, 2013, Lt. Evans was promoted to Sergeant, and later to Lieutenant on or about December 8, 2016.

15)     When he received his promotion to sergeant on or about June 24, 2013, Lt. Evans was assigned to the Montgomery County Division of the Park Police, where he came under the command of Defendants Uhrig and Murphy.

16)     On March 20, 2015, after years of being subjected to unfair and unwarranted scrutiny, mistreatment, unfair and unwarranted employment actions, and being generally

subjected to disparate treatment in the conditions of his employment on account of his race, Lt. Evans filed an internal complaint against Defendants Uhrig and Murphy, a protected activity under federal law.

17)     On March 8, 2016, an official investigation sustained six (6) of nine (9) allegations filed against Defendant Uhrig by Lt. Evans, as well as two (2) of three (3) allegations filed against Defendant Murphy.

18)     Despite these sustained allegations of misconduct uncovered by an internal investigation, Defendants Murphy and Uhrig were left in active duty, with Defendant Murphy even receiving a temporary promotion to acting captain.

19)     Left in positions of authority, and receiving no additional training or serious reprimand or other employment action for their misconduct, Defendants Murphy and Uhrig retaliated against Lt. Evans for his internal complaint of racial discrimination and other misconduct.

20)     Defendant Riley assisted Defendants Murphy and Uhrig in retaliating against Lt. Evans by authorizing investigations over allegations he knew or should have known to be false.

21)     In the alternative, Defendant Riley assisted Defendants Murphy and Uhrig in retaliating against Lt. Evans by authorizing investigations of allegations against him with deliberate indifference and reckless disregard for whether they were true.

22)     In or about April 2018, demonstrating an ongoing retaliatory animus against Lt. Evans for his sustained complaints against them, and having bided their time, Defendants Murphy and Uhrig filed false fraud, waste, and abuse allegations against Lt. Evans, falsely alleging numerous allegedly fraudulent entries on his time sheets, and subjecting Lt. Evans to unfair, unwarranted, and additional scrutiny.

23)     Defendant Riley, knowing of Murphy and Uhrig's retaliatory contempt and that the allegations were fraudulent, authorized an investigation into Lt. Evans.

24)     In the alternative, Defendant Riley, with deliberate indifference and reckless disregard as to whether the allegations against Lt. Evans were fraudulent, authorized an investigation into Lt. Evans.

25)     In the alternative, Defendant, with ill-will, malice, and improper motive, authorized an investigation into Lt. Evans.

26)     That unwarranted investigation found only a single erroneous entry, and one which had already been corrected.  Despite this, Lt. Evans was nonetheless issued a formal employment action, in the form of being issued a New Directions Counseling by Defendant Chief McSwain.

27)     On or about December 12, 2018, Defendants Murphy, Riley, and Uhrig had Lt. Evans subjected to an investigation regarding Comp K9 leave payouts, subjecting him to yet another harassing and retaliatory investigation.

28)     Because of Lt. Evans's race, and in retaliation for filing racial discrimination and other charges against Defendants Murphy and Uhrig, Defendants Murphy and Uhrig subjected Lt. Evans to unfair and unwarranted scrutiny and investigations, subjecting him to unequal conditions in the terms of his employment, and creating a hostile work environment.

29)     As a result of this retaliatory conduct, Lt. Evans filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 17, 2018, a protected activity.  This did not sit well with Defendant McSwain.

30)     On or about February 28, 2019, while conducting a promotional evaluation for the St. Mary's County Sheriff's Department, Lt. Evans suffered a concussion when he was hit in the head.

31)     On March 12, 2019, as a result of the concussion, Lt. Evans was approved for disability leave, which ended March 22, 2019.

32)     Defendant McSwain took this opportunity to retaliate against Lt. Evans for filing an EEOC complaint against agency personnel.

33)     Defendant McSwain humiliated Lt. Evans by issuing a medical suspension, and stripping Lt. Evans of his badge, firearm, work ids, work laptop, and other equipment.  A medical suspension had never been issued to any other employee before, but Defendant McSwain invented it as retaliation for Lt. Evans filing his EEOC complaint, a protected activity.

34)     Similarly situated officers who have not filed EEOC complaints did not receive suspensions or get stripped of their badge and all other work equipment, including but not limited to:

    a)     Lt. Chris Tippery, who is white; and

    b)     Ofc. Zenobia Santana, who is Latina.

35)     Defendants Murphy and Uhrig also routinely used racial slurs to refer to minority officers, both in person and in electronic and other communications, using terms such as, but not limited to:

    a)     Negro;

    b)     Colored;

    c)     Cp time;

    d)     Koon;

e)      Nigga;

f)      Nigger;

g)      Monkey;

h)      Spook;

i)      Redskins;

j)      Featherhead;

k)      Scalp or scalping;

l)      Spic;

m)     Wet back;

n)      Slant eyes;

o)      Cockroach; and

p)      Ape.

36)     Use of such slurs by Defendants Murphy and Uhrig is known throughout the department, and has created a hostile working environment for Lt. Evans, subjecting him to a pervasive atmosphere of racial discrimination and the regular use of racial slurs at his place of employment.

37)     The misconduct described herein has cast a pall over Lt. Evans's career, impacting his advancement and earnings opportunities.

38)     Witness to this discrimination and retaliation by Defendants Murphy and Uhrig, against Lt. Evans, include, but are not limited to:

a)      Cpt. Nicole Adams ("Cpt. Adams");

b)      Cpl. Justin Andrews ("Cpl. Andrews");

c)      Acting Chief George Coleman;

d)      Sgt. Kevin Coles ("Sgt. Coles");

e)      Renee Kenney;

f)      Lt. Patrick Lau ("Lt. Lau");

g)      Cpt. Rick Pelicano ("Cpt. Pelicano");

h)      Cpt. Philipose;

i)      Lt. Charles Smith ("Lt. Smith");

j)      Lt. Christopher Tippery ("Lt. Tippery"); and

k)      Det. Truesdale.

39)    These same witnesses have also witnessed Defendants Murphy and Uhrig use racist slurs and question the intelligence of African American officers, as well as target African American officers unfairly.

40)    Other officers similarly situated to Lt. Evans were not subjected to similar treatment, including but not limited to:

a)      Myrical Gratton, who is white;

b)      Adam MacLeod, who is white;

c)      Keith Genry, who is white;

d)      Patrick Lau, who is white;

e)      John Polk, who is white; and

f)      Chris Tippery, who is white.

41)    But for Lt. Evans' race, he would not have been subjected to the racially hostile and retaliatory actions of Defendants Murphy and Uhrig.

42)     Lt. Evans has been subjected to superfluous investigations by Defendants Murphy and Uhrig for no other reason than the fact that he is an African American supervisory employee, and in retaliation for the complaints filed against Defendants Murphy and Uhrig.

43)     At all times relevant to the occurrences complained of herein, Defendants Murphy and Uhrig acted within the scope of their employment.

44)     At all times relevant hereto, the Defendant Officers acted under color and pretense of law, and under color of statutes, customs, and usages of the State of Maryland.

45)     At all times relevant to the occurrences complained of herein, Defendants Murphy and Uhrig acted deliberately, with ill will, improper motive, and actual malice.

46)     And/or in the alternative, at all times relevant to the occurrences complained of herein, Defendants Murphy and Uhrig acted knowingly, deliberately, and intentionally.

47)     And/or in the alternative, at all times relevant to the occurrences complained of herein, Defendants Murphy and Uhrig acted with negligence.

48)     And/or in the alternative, at all times relevant to the occurrences complained of herein, Defendants Murphy and Uhrig acted with gross negligence.

49)     Lt. Evans filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 17, 2018, and was issued a right to sue notice on June 14, 2019.

50)     Lt. Evans has complied with all conditions precedent to the filing of this suit.

51)     At not times did Lt. Evans cause or contribute to the discriminatory treatment outlined herein.

52)     As a result of Defendants conduct, Lt. Evans has been caused to suffer, and continues to suffer, a racially hostile work environment and unequal terms in the conditions of

his employment, in addition to severe mental anguish and emotional suffering, manifesting in physical symptoms including anxiety, stress, anger, and loss of sleep.

## COUNT I
## CIVIL RIGHTS ACT [42 U.S.C. § 1981]
## Hostile Work Environment

53)     All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

54)     The Plaintiff is an African American and, thus, a member of a protected class.

55)     Plaintiff has a right to the enjoyment of all benefits, privileges, terms, and conditions, of his employment, including to be free of a racially hostile work environment, by persons acting individually or under color of state law.

56)     Plaintiff was employed by Defendant MNCPPC, as a member of the Park Police, at all times relevant to the instant action and is still so employed.

57)     Defendants' discriminatory behavior was based on Plaintiff's race and the inappropriate conduct was unwarranted and unwanted by Plaintiff.

58)     Defendant's discriminatory behavior, including, though not limited to, unfounded formal accusations and reprimands, the use of racially offensive language to refer to African American officers in both oral and other communications, including email, was sufficiently severe and/or pervasive to alter Plaintiff's condition of employment and to create a hostile, intimidating, and/or abusive work environment and has the effect of unreasonably interfering with Plaintiff's employment.

59)     Even after an internal investigation sustained many of the charges filed by Plaintiff against Defendants Murphy and Uhrig for their discriminatory acts, Defendant

MNCPPC allowed both to remain in supervisory positions where they could retaliate against, and impose a hostile work environment on Plaintiff.

60)     The racially discriminatory behavior and retaliation was committed by members of Defendant MNCPPC supervisory staff, in and during the ordinary course of employment.

61)     But for Plaintiff's race and prior complaints against the individual defendants, Plaintiff would not have been subjected to the discriminatory conduct and a hostile and/or abusive work environment.

62)     Defendant's aforementioned actions constitute discrimination, on the basis of Plaintiff's race, with respect to the terms, conditions, or privileges of Plaintiff's employment.

63)     As a result of the Defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damage.

64)     Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

### COUNT II
### TITLE VII [42 U.S.C. §§ 2000e-2]
### Hostile Work Environment

65)     All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

66)     The Plaintiff is an African American and, thus, a member of a protected class.

67)     Plaintiff has a right to be free of discrimination based on race with respect to all the benefits, privileges, terms, and conditions, of his employment, including to be free of a racially hostile work environment, by persons acting individually or under color of state law.

68)     Plaintiff was employed by Defendant MNCPPC, as a member of the Park Police, at all times relevant to the instant action and is still so employed.

69)     Defendants' discriminatory behavior was based on Plaintiff's race and the inappropriate conduct was unwarranted and unwanted by Plaintiff.

70)     Defendant's discriminatory behavior, including, but not limited to, the use of racially hostile and abusive language, and retaliation, was sufficiently severe and/or pervasive to alter Plaintiff's condition of employment and to create a hostile, intimidating, and/or abusive work environment and has the effect of unreasonably interfering with Plaintiff's employment.

71)     The racially discriminatory behavior was committed by members of Defendant MNCPPC Park Police supervisory staff, in and during the ordinary course of employment, and is therefore imputable to the employer.

72)     But for Plaintiff's race, Plaintiff would not have been subjected to the discriminatory conduct and a hostile and/or abusive work environment.

73)     Defendant's aforementioned actions constitute discrimination, on the basis of Plaintiff's race, with respect to the terms, conditions, or privileges of Plaintiff's employment.

74)     As a result of the Defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damage.

75)     Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT III
### TITLE VII [42 U.S.C. §§ 2000e-3]
### Retaliation

76)     All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

77)     The Plaintiff is an African American and, thus, a member of a protected class.

78)     Plaintiff has a right to be free of discrimination because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing alleging discrimination based on race.

79)     Plaintiff was employed by Defendant MNCPPC at all times relevant to the instant action and is still so employed.

80)     Plaintiff made a formal complaint against Defendants Murphy and Uhrig for racial discrimination, and was subsequently subjected to false accusations of fraud and theft by Defendants, and other acts of retaliation as described elsewhere herein.

81)     Plaintiff was engaged in a protected activity when he filed his complaint of racial discrimination against Defendants Murphy and Uhrig.

82)     Plaintiff also filed a complaint with the EEOC, after which he was humiliated and suspended by Defendant McSwain in retaliation.

83)     But for Plaintiff's reporting of racial discrimination and also filing an EEOC charge, Plaintiff would not have been subjected to discriminatory treatment, including, but not limited to, being falsely accused of fraud and beings subjected to a compelled interrogation.

84)     As a result of the Defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damage.

85)     Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## <u>COUNT IV</u>
## CIVIL RIGHTS ACT [42 U.S.C. § 1983]
### First Amendment Retaliation

86)     All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

87)     The Plaintiff is an African American and, thus, a member of a protected class.

88)     Plaintiff has a right to freedom of speech and to be free of the deprivation of his rights by any person acting under color of state law.

89)     Plaintiff was employed by Defendant MNCPPC, as a member of the Park Police, at all times relevant to the instant action and is still so employed.

90)     Defendant supervisors were employed by Defendant MNCPPC at all times relevant to the instant action and are still so employed, and thus were acting at all times relevant to the instant action under color of state law.

91)     Plaintiff's complaint to Defendant MNCPPC regarding racial discrimination by Defendants Murphy and Uhrig, and a racially hostile and/or abusive work environment, were

acts of protected speech, as was his EEOC filing, for which he was retaliated against by Defendant McSwain.

92)     Plaintiff was subjected to retaliatory actions by Defendants Murphy and Uhrig, including, but not limited to, being falsely accused of fraud, for engaging in protected speech.

93)     Defendants McSwain's, Murphy's, and Uhrig's actions adversely affected Plaintiff's constitutionally protected speech.

94)     As a result of the Defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damage.

95)     Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT V
### TITLE VII [42 U.S.C. §§ 2000e-2]
### Racial Discrimination

96)     All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

97)     The Plaintiff is an African American and, thus, a member of a protected class.

98)     Plaintiff has a right to be free from racial discrimination in the compensation, terms, conditions, privileges of employment, and in the hiring and discharge of employees.

99)     Plaintiff was subjected to unfair scrutiny which similarly situated white officers did not receive by Defendants Murphy and Uhrig, as well as subjected to false allegations and

investigations by Defendants Murphy and Uhrig, and receiving an unwarranted New Directions Counseling from Defendant McSwain.

100)    But for Plaintiff's race and internal complaint of racial discrimination, Plaintiff would not have been falsely accused of fraud, *inter alia*, by Defendants Murphy and Uhrig.

101)    As a result of the Defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damage.

102)    Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

<u>**COUNT VI**</u>
**CIVIL RIGHTS ACT [42 U.S.C. § 1983]**
**Due Process**

103)    All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

104)    The Defendants were, at all relevant times, acting "under color of law," pursuant to the laws and regulations of the State of Maryland, and the Constitution of the United States.

105)    The Plaintiff was deprived of his Constitutional rights as well as his rights as described above under the Civil Rights Act, a federal statute.

106)    With respect to the United States Constitution, the Plaintiff was denied the right to due process of law insofar as his employer, a government agency, hired and continued to employ

persons known to engage in racially offensive and discriminatory, and retaliatory conduct to act as his supervisors and as agents of the government.

107)     Defendant MNCPPC knew of this discriminatory conduct because an internal investigation sustained numerous complaints against Defendants Murphy and Uhrig, and because many Park Police officers protested the resulting lack of discipline imposed on Defendants despite the sustained complaints, including, but not limited to:

      a)     Cpt. Adams;

      b)     Cpl. Andrews;

      c)     Sgt. Coles;

      d)     Lt. Lau;

      e)     Cpt. Pelicano;

      f)     Cpt. Philipose;

      g)     Lt. Smith; and

      h)     Lt. Tippery.

108)     The Plaintiff has a liberty interest in the right to be secure in his person in the workplace.  This interest was violated when Defendant supervisors made racially offensive comments in person and in other communications, subjected Plaintiff to unfair and additional scrutiny, falsely accused him of fraud and theft in retaliation for engaging in protected activity, subjected Plaintiff to a compelled interrogation, *inter alia*.  This interest was also violated when Defendant MNCPPC failed to adequately discipline Defendants Murphy and Uhrig, even after an internal investigation sustained complaints filed against them by Lt. Evans.

109)     Plaintiff's rights were further violated when the Plaintiff was retaliated against by Defendants and Uhrig for reporting the racial discrimination, being re-victimized for asserting

his rights in the workplace.  He was subjected to a hostile work environment and unequal treatment, enduring undue stress and anxiety as a result.  Such conditions were placed on Lt. Evans individually in retaliation for his reporting Defendants Murphy's and Uhrig's racially discriminatory conduct.

110)    This interest was also violated when Plaintiff was retaliated against by Defendant McSwain for filing an EEOC complaint.

111)    There are no adequate procedural safeguards in place to prevent this abuse.

112)    As a result of the Defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damage.

113)    Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT VII
## CIVIL RIGHTS ACT [42 U.S.C. § 1983]
### Equal Protection

114)    All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

115)    The African American Plaintiff was treated differently than his similarly-situated white counterparts, based solely on his race.

116)     The Plaintiff was singled out for discrimination and retaliation by the defendants based upon his race.  Similarly situated white employees suffered no similar discrimination, and therefore, were not retaliated against.

117)     There is not a rational basis, legitimate state purpose, or important governmental interest in the discrimination and retaliation at issue.

118)     The Plaintiff is a member of a protected class and was being intentionally singled out because of his race.

119)     As a result of the Defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damage.

120)     Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

### COUNT VIII
### CIVIL RIGHTS ACT [42 U.S.C. § 1983]
### Disparate Treatment

121)      All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

122)     Plaintiff is an African American and therefore a member of a protected class.

123)     Plaintiff was subjected to unwarranted, unfair, and baseless investigations, as well as unwarranted discipline, adversely affecting the terms, conditions, and/or benefits of Plaintiff's employment, and thus constituting adverse employment actions.

124)     Plaintiff was subjected to these adverse employment actions despite satisfactory job performance, as evidenced by his Performance Review and Appraisal of October 14, 2018, conducted by Cpt. Adams, in which Plaintiff scored the highest score possible in every single appraised category.

125)     Other officers similarly situated to Lt. Evans received more favorable treatment and were not subjected to similar treatment such as false allegations of fraud, including but not limited to:

    a)     Myrical Gratton, who is white;

    b)     Adam MacLeod, who is white;

    c)     Keith Genry, who is white;

    d)     Patrick Lau, who is white; and

    e)     John Polk, who is white.

126)     Plaintiff was also subjected to a retaliatory medical suspension by Defendant McSwain, and humiliatingly stripped of badge, firearm, and all other work equipment.

127)     Other officers similarly situated to Lt. Evans received more favorable treatment and were not subjected to medical suspension or stripped of all their work equipment when injured and taking medical leave, including but not limited to:

    a)     Lt. Chris Tippery, who is white; and

    b)     Ofc. Zenobia Santana, who is Latina.

128)     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damages.

129)    Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

**COUNT IX**
**TITLE VII [42 U.S.C. §§ 2000e-2]**
**Disparate Treatment**

130)    All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

131)    Plaintiff is an African American and therefore a member of a protected class.

132)    Plaintiff was subjected to unwarranted, unfair, and baseless investigations, as well as unwarranted discipline, adversely affecting the terms, conditions, and/or benefits of Plaintiff's employment, and thus constituting adverse employment actions.

133)    Plaintiff was subjected to these adverse employment actions despite satisfactory job performance, as evidenced by his Performance Review and Appraisal of October 14, 2018, conducted by Cpt. Adams, in which Plaintiff scored the highest score possible in every single appraised category.

134)    Other officers similarly situated to Lt. Evans received more favorable treatment and were not subjected to similar treatment such as false allegations of fraud, including but not limited to:

    a)    Myrical Gratton, who is white;

    b)    Adam MacLeod, who is white;

    c)    Keith Genry, who is white;

    d)       Patrick Lau, who is white; and

    e)       John Polk, who is white.

135)    Plaintiff was also subjected to a retaliatory medical suspension by Defendant McSwain, and humiliatingly stripped of badge, firearm, and all other work equipment.

136)    Other officers similarly situated to Lt. Evans received more favorable treatment and were not subjected to medical suspension or stripped of all their work equipment when injured and taking medical leave, including but not limited to:

    a)       Lt. Chris Tippery, who is white; and

    b)       Ofc. Zenobia Santana, who is Latina.

137)    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damages.

138)    Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

### COUNT X
### MARYLAND FAIR EMPLOYMENT PRACTICES ACT
### [Md. Code, State Gov't, § 20-606]
### Racial Discrimination and Hostile Work Environment

139)    All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

140)    The foregoing conduct violates the Fair Employment Practices Act ("Act"), State Government Article §§ 20-606, et seq., which provides that discrimination on the basis of race, with respect to the compensation, terms, conditions, or privileges of employment, is an unlawful employment practice.

141)    The foregoing conduct further violates the Fair Employment Practices Act, State Government Article §§ 20-606, et seq., which provides that it is unlawful for any employer or person to discriminate against any persons because that person has opposed any practices forbidden under this part, or because the person has filed a complaint in opposition to any practices forbidden by the Fair Employment Practices Act.

142)    The foregoing conduct violates the Fair Employment Practices Act, State Government Article §§ 20-606, et seq., which provides that it is an unlawful practice for any employer or person to retaliate against or otherwise discriminate against any person because the person has opposed any practices forbidden by the Act or because the person has filed a complaint, testified, assisted in any proceeding or asserted legal rights under the law.

143)    The racial discrimination and retaliation against the Plaintiff created an oppressive, hostile, intimidating and/or offensive work environment for the Plaintiff and interfered with his emotional well-being and ability to perform his duties. The racial discrimination and retaliation were sufficiently severe and pervasive as to materially alter Plaintiff's conditions of employment, and to create an abusive working environment.

144)    As a direct and proximate result of Defendant Supervisors racial discrimination against Plaintiff described above, and the Defendants' retaliation, Plaintiff has suffered and will continue to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damage.

145)     The acts of Defendants alleged above were done maliciously, oppressively and/or fraudulently.  Defendant MNCPPC knew, or should have known, that there was an ongoing problem with racial discrimination at the Park Police and employed Defendants Murphy and Uhrig, despite sustained complaints against them, with conscious disregard for the rights or safety of the Plaintiff and of other employees.  Such disregard also amounts to the Defendants having acted with gross negligence.

146)     Upon Plaintiff's formal complaint being sustained on numerous counts by the internal investigator, Defendant MNCPPC could have implemented significant remedies, but chose not to.

147)     Plaintiff is entitled to compensatory and punitive damages.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT XI
## MARYLAND CONST. ART. 24 AND 26
### Due Process

148)     All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

149)     The Defendants were, at all relevant times, acting "under color of law," pursuant to the laws, regulations, and Constitution of the State of Maryland, and the Constitution of the United States.

150)     The Plaintiff was deprived of his substantive and procedural due process rights under the Maryland Constitution.

151)    With respect to the Maryland Constitution, the Plaintiff was denied the right to due process of law insofar as his employer, a government agency, hired and continued to employ persons known to engage in racially offensive and discriminatory conduct to act as his supervisors and as agents of the government.

152)    The Plaintiff has a liberty interest in the right to be secure in his person in the workplace.  This interest was violated when Defendant supervisors made racially offensive comments in person and in other communications, subjected Plaintiff to unfair and additional scrutiny, falsely accused him of fraud and theft in retaliation for engaging in protected activity, subjected Plaintiff to a compelled interrogation, *inter alia*.  This interest was also violated when Defendant MNCPPC failed to adequately discipline Defendants Murphy and Uhrig, even after an internal investigation sustained complaints filed against them by Lt. Evans.

153)    Plaintiff's rights were further violated when the Plaintiff was retaliated against by his supervisors for reporting the racial discrimination, being re-victimized for asserting his rights in the workplace.  He was subjected to a hostile work environment and unequal treatment, enduring undue stress and anxiety as a result.  Such conditions were placed on Plaintiff individually in retaliation for his reporting Defendant Supervisors' racially discriminatory conduct.

154)    Plaintiff's rights were further violated when Defendant McSwain retaliated against Plaintiff for filing an EEOC complaint.

155)    There are no adequate procedural safeguards in place to prevent this abuse.

156)    As a result of the Defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damage.

157)     Plaintiff is entitled to compensatory and punitive damages.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

**COUNT XII**
**MARYLAND CONST. ART. 24 AND 26**
**Equal Protection**

158)     All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

159)     The African American Plaintiff was treated differently than his similarly-situated white counterparts, based solely on his race.

160)     The Plaintiff was singled out for discrimination and retaliation by the defendants based upon his race.  Similarly situated white employees suffered no similar discrimination or retaliation.

161)     There is not a rational basis, legitimate state purpose, or important governmental interest in the discrimination and retaliation at issue.

162)     The Plaintiff is a member of a protected class and was being intentionally singled out because of his race.

163)     As a result of the Defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damage.

164)     Plaintiff is entitled to compensatory and punitive damages.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT XIII
## NEGLIGENT TRAINING,
## RETENTION & SUPERVISION

165)   All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

166)   Defendant MNCPPC bears direct responsibility for the training, retention and supervision of Defendants McSwain, Murphy, and Uhrig, and owes a duty to the employees of MNCPPC to ensure the safety, health, and welfare of their employees.

167)   Defendant MNCPPC was negligent in failing to exercise its duty to provide any training sufficient to prevent the racial discrimination and other misconduct outlined herein.

168)   Defendant MNCPPC was negligent in failing to exercise its duty to properly supervise Defendant Supervisors so as to prevent the racial discrimination and other misconduct outlined herein.

169)   Defendant MNCPPC knew of the numerous complaints against Defendants Murphy and Uhrig when its internal investigator sustained formal complaints filed against them by Plaintiff, and was therefore aware of Defendant Supervisors' incompetence in their supervisory positions.  These sustained complaints clearly illustrated Defendant Supervisors' unfitness for the duties of their jobs and their willingness to allow and engage in racially discriminatory conduct.  Yet, MNCPPC violated their duty by failing to discipline or terminate Defendant Supervisors.

170)    As a result of the Defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damages.

171)    But for the Defendant MNCPPC's negligence, Plaintiff would not have been subjected to Defendant Supervisors' racial discrimination and would not have suffered damage.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT XIV
## NEGLIGENCE

172)    All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

173)    The Defendants owed Plaintiff a duty of care.

174)    Defendants McSwain, Murphy, and Uhrig breached that duty of care by engaging in racial discrimination, creating a hostile work environment, and retaliating against Plaintiff.

175)    Plaintiff suffered damages as a direct result of the individual Defendants' breach of their duty of care.

176)    As a direct and proximate result of the aforesaid negligent conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damages.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT XV
## GROSS NEGLIGENCE (IN THE ALTERNATIVE)

177)     All paragraphs of this complaint, whether found above or below, not falling under this count, are incorporated herein by reference as if fully stated under this count.

178)     The individual Defendants acted with a wanton and reckless disregard for Plaintiff's civil rights by engaging in racially discriminatory behavior.

179)     The individual Defendants intentionally failed to perform their duties as supervisors by engaging in racially discriminatory behavior, and allowing and encouraging a pervasive atmosphere of racially offensive and discriminatory, as well as retaliatory behavior.

180)     The individual Defendants' conduct demonstrated a thoughtless disregard of the consequences of their actions and showed no effort to avoid these consequences.

181)     The individual Defendants' conduct demonstrated an indifference to Plaintiff's civil rights to the point where they acted as if such rights did not exist.

182)     The individual Defendants intentionally inflicted damages on Plaintiff through their wrongful conduct.

183)     As a direct and proximate result of the aforesaid grossly negligent conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic damages.

184)     Plaintiff is entitled to compensatory and punitive damages.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## JURY TRIAL DEMAND

The Plaintiff respectfully demands trial by jury.

Respectfully submitted,

Hansel Law, pc

_____/s/_____
Cary J. Hansel (Bar No. 14722)
cary@hansellaw.com
2514 N. Charles Street
Baltimore, MD 21218
Phone: (301) 461-1040
Fax: (443) 451-8606
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of September, 2019, I caused the foregoing to be filed via the Court's electronic filing system, which will make service on all parties entitled to service.

_____/s/_____
Cary J. Hansel